IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF ALASKA,<br>P.O. Box 110300<br>Juneau, AK 99811 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| THE UNITED STATES<br>DEPARTMENT OF AGRICULTURE,<br>1400 Independence Ave. S.W.<br>Washington, DC 20250; | )<br>)<br>)<br>)<br>) |
| THE UNITED STATES<br>DEPARTMENT OF AGRICULTURE<br>FOREST SERVICE,<br>1400 Independence Ave. S.W.<br>Washington, DC 20250; | )<br>)<br>)<br>)<br>)<br>) |
| TOM VILSACK, in his official<br>capacity as Secretary of Agriculture,<br>1400 Independence Ave. S.W.<br>Washington, DC 20250; | )<br>)<br>)<br>)<br>) |
| TOM TIDWELL, in his official<br>capacity as Chief, Forest Service,<br>1400 Independence Ave. S.W.<br>Washington, DC 20250 | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

CIVIL ACTION NO.:

_____

**STATE OF ALASKA'S COMPLAINT FOR DECLARATORY JUDGMENT**

**INTRODUCTION**

1.     This is an action by the State of Alaska seeking a judgment declaring

that by promulgating and by applying the 2001 Roadless Area Conservation Final Rule

and Record of Decision (Roadless Decision) to the Tongass National Forest (Tongass) and Chugach National Forest (Chugach) the United States Department of Agriculture, the United States Forest Service, Tom Vilsack, in his official capacity as Secretary of Agriculture, and Tom Tidwell, in his official capacity as Chief of the Forest Service, collectively (Defendants or USFS), violated the Alaska National Interest Lands Conservation Act (ANILCA), the Tongass Timber Reform Act (TTRA), the Wilderness Act, the National Forest Management Act (NFMA), the National Environment Policy Act (NEPA), the Multiple-Use Sustained-Yield Act (MUSYA), the Organic Administration Act (OAA), and the Administrative Procedure Act (APA), and their implementing regulations.[1] By failing to follow these laws and by applying them to the national forests in Alaska in an arbitrary and capricious manner, Defendants have irreparably harmed the State of Alaska.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 to 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The United States has waived sovereign immunity in this type of action in 5 U.S.C. § 702.

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1361 because this case arises under the Administrative Procedure Act (5 U.S.C. §§ 701 to 706), the Alaska National Interest Lands Conservation Act

---

[1]      A table of Acronyms and Abbreviations is provided as Appendix 1 to this complaint.

(ANILCA) of 1980 (as amended) (16 U.S.C § 3101 *et seq.*), the Wilderness Act (16 U.S.C § 1131 *et seq.*), the Tongass Timber Reform Act (TTRA) (16 U.S.C. § 559(d)), the National Forest Management Act (NFMA) (16 U.S.C. §1600 *et seq.*), the National Environmental Policy Act (NEPA) (42 U.S.C. § 4321 *et seq.*), the Multiple-Use Sustained-Yield Act (MUSYA) (16 U.S.C. § 528 *et seq.*), and the Organic Administration Act (16 U.S.C. § 475).

    4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this action is brought against officers of agencies in the United States in their official capacities and against the Service. Further, actions and decisions challenged by this lawsuit were made, at least in part, in the District of Columbia. Alaska maintains an office in the District of Columbia.

## PARTIES

    5.    Plaintiff, State of Alaska, is a sovereign state of the United States. The Tongass and the Chugach, the nation's two largest national forests, are located within the State of Alaska. Since 1959, the State has received either National Forest Receipt payments or payments in lieu of forest receipts under the Secure Rural Schools and Community Self-Determination Act. (16 U.S.C. § 500). In 2009 the State received payments of $6,868,880 for the Chugach and $17,845,765 for the Tongass. The State also owns and manages land that is contiguous or in close proximity to national forest lands such that management practices of the USFS on national forest lands have environmental and other effects on State lands.

3

6.       Defendant United States Department of Agriculture is the department of the executive branch responsible for overseeing the activities of the United States Forest Service, the agency charged with the administration of the national forests.

7.       Defendant United States Forest Service is an agency of the United States Department of Agriculture and is charged with the administration of the national forests, including the Tongass and the Chugach.

8.       Defendant Tom Vilsack is the Secretary of Agriculture and is sued in his official capacity for the actions of his predecessor, former Secretary of Agriculture Daniel R. Glickman, who signed the challenged Roadless Decision. *See* 66 Fed Reg. 3273 (2001); 65 Fed. Reg. 67581 (2000). The Forest Service is an agency of the United States Department of Agriculture and is subject to the direction and control of defendant Vilsack in his official capacity.

9.       Defendant Tom Tidwell is the Chief of the Forest Service and is sued in his official capacity for the actions of his predecessor, former Chief Michael Dombeck. Defendant Tidwell is responsible for operations and activities of the Forest Service on national forest system lands under delegations of authority from the Secretary of Agriculture to the Chief of the Forest Service.

## FACTS

10.       Citing Forest Service budgetary concerns about maintenance of the existing road system and a perceived public concern to protect inventoried roadless areas in the national forest system, the USFS suspended all road construction and

4

reconstruction in certain unroaded areas of the national forest system for an "interim" period of 18 months beginning March 1, 1999.  64 Fed. Reg. 7290 (1999).

11.     The Tongass was excluded from the March 1, 1999 interim suspension on the ground that the revised Tongass Land Management Plan (TLMP) had been completed after January 1, 1996.   The Chugach was included in the interim suspension.

12.     On October 13, 1999, President Clinton issued the Roadless Area Conservation Initiative.  In his memorandum to the Secretary of Agriculture, he stated "I have determined that it is in the best interest of our Nation... to provide strong and lasting protection for these forests".  President Clinton then directed the USFS "to develop, and propose for public comment, regulations to provide appropriate long-term protection for most or all of these currently inventoried 'roadless' areas and to determine whether such protection is warranted for any smaller 'roadless' areas not yet inventoried." FEIS at 1-6.

13.     On October 19, 1999, only six days after the President's memorandum, the USFS issued a notice of intent to prepare an environmental impact statement (EIS) for a nationwide roadless policy consisting of two parts.  Part one would restrict activities such as new road construction in inventoried roadless areas.  Part two would establish a national direction for managing inventoried roadless areas and for determining whether similar restrictions should be extended to non-inventoried roadless areas.  The scoping comment period for the proposal closed on December 20, 1999. Defendants denied multiple requests to extend the comment period, including requests from states and members of Congress.  Interested parties who requested maps and other

information to assist with identifying what areas would actually be covered by the roadless prohibitions were not provided adequate information.  Defendants also denied requests from 10 states to participate in the rulemaking as cooperating agencies pursuant to 40 C.F.R. 1501.  Defendants denied the states cooperating agency status because Defendants believed the states would want to analyze impacts at a greater level of detail than Defendants desired.

14.     In soliciting scoping comments on the Roadless Area Conservation Initiative, the Notice of Intent asked for public comment on whether the 9.3 million acres of inventoried roadless areas in the Tongass should be covered by the final rule.  The Notice of Intent also asked for public comment on whether the Tongass should be covered under part one of the rule or only under part two.

15.     At the time of the Notice of Intent, the 16.9 million acre Tongass already contained 5.8 million acres of congressionally designated wilderness and 3.3 million acres of congressionally designated LUD II areas, which are roadless and in which development and timber harvest are severely restricted.

16.     On May 10, 2000, the USFS published a draft environmental impact statement (DEIS) entitled "Forest Service Roadless Area Conservation".  65 Fed. Reg. 30275.

17.     The Roadless Decision DEIS accompanied a proposed rule that: (1) prohibited road construction and reconstruction in inventoried roadless areas (hereinafter the "prohibition rule"); and (2) required local managers to identify unroaded areas other than inventoried roadless areas and determine, at the time of land and

resource management plan revisions required under the NFMA, which unroaded areas warranted protection and the level of protection to be afforded (hereinafter the "procedural rule").

18.     The Roadless Decision DEIS included four "prohibition alternatives": 1) a no-action alternative; 2) a prohibition on road construction and reconstruction within the unroaded portions of inventoried roadless areas; 3) a prohibition on road construction, reconstruction, and timber harvest except for stewardship purposes within the unroaded portions of inventoried roadless areas; and 4) a prohibition on road construction, reconstruction, and all timber harvest within the unroaded portions of inventoried roadless areas.

19.     There was no alternative considered that would allow some road construction to support a reasonable amount of development. All alternatives, except the legally required no action alternative, achieved the Clinton Initiative goal of prohibiting virtually all future road construction without examining any alternatives that evaluated a balanced approach to roadless protection and development that supports the local communities. The alternatives evaluated provided no analysis as to impacts and benefits of providing lesser protection or protections on a lesser area while allowing some level of development.    Prior to development of the draft rule, the USFS Exemption Team internally considered additional alternatives for the Tongass and for the prohibitions nationwide that would have allowed development to varying degrees, but the team determined it would be inappropriate to consider alternatives that would not be responsive to the President's directive.

20.     The preferred alternative in the Roadless Decision DEIS was the second alternative, prohibiting road construction and reconstruction within the unroaded portions of inventoried roadless areas, but allowing timber harvest where such harvest could occur without the construction of roads. Very little commercial timber harvest was expected to occur without roads due to the high cost of logging without road access.

21.     The DEIS also included four "procedural alternatives": 1) a no-action alternative; 2) a requirement for evaluation and implementation of protections for unroaded areas at the next forest plan revision; 3) a requirement that the local manager evaluate whether and how to protect roadless characteristics on a project-by-project basis; and 4) a requirement for consideration of roadless characteristics on a project-by-project basis pending completion of a forest plan revision (a combination of 2 and 3). The preferred alternative was the second alternative, requiring evaluation and implementation of protections for unroaded areas at the next forest plan revision.

22.     The DEIS also included four "Tongass alternatives": 1) including the Tongass in the alternative selected for the rest of the national forest system; 2) exempting the Tongass from the alternative selected; 3) not immediately including the Tongass in the alternative selected, but at the five-year TLMP review determining whether road construction in roadless areas should be prohibited; and 4) prohibiting road construction only in old-growth and remote recreation areas of the Tongass.

23.     The third alternative was the preferred Tongass alternative, postponing a decision on whether to apply the prohibitions to any or all of the unroaded portions of inventoried roadless areas in the Tongass until the five-year review of the

8

1999 revised TLMP in April 2004. This alternative specifically required the forest supervisor to consider § 101 of the TTRA as part of this determination. This section of the TTRA requires the USFS to seek to meet timber demand from the Tongass. The DEIS stated that approximately two-thirds of future Tongass timber was expected to come from roadless areas in the Tongass and application of the Roadless Rule to the Tongass would result in large shortfalls of timber in relationship to demand. As stated in the DEIS, a delay in making a decision until 2004 would allow the USFS to consider whether market demand for Tongass timber had sufficiently declined by 2004 to be met without any timber from the roadless areas subject to this rulemaking.

24.    Defendants prepared a Regulatory Flexibility Analysis as required by the Regulatory Flexibility Act (RFA) (5 U.S.C. 601 *et seq.*). After receiving many comments on deficiencies in draft versions, Defendants submitted the final version to the Small Business Administration Office of Advocacy for final clearance review. On November 14, 2000, Jennifer Smith, Assistant Chief Counsel for Economic Regulation, notified the Defendants that many deficiencies remained in the analysis, and that the changes between the draft and the final rule, such as application to the Tongass, required public notice and the opportunity to comment. The Small Business Administration found that the failure to provide these opportunities for public comment and the deficiencies in the analysis required by the RFA constituted violations of both the RFA and the APA. Defendants made no changes in the Regulatory Flexibility Analysis in response to these findings by the Small Business Administration.

25.     On November 13, 2000, the USFS published the Final Roadless Environmental Impact Statement (FEIS).  In a change from the DEIS, the USFS chose prohibition alternative 3, prohibiting construction, reconstruction, and timber harvest except for stewardship purposes, and applying the prohibitions to both the roaded and unroaded portions of inventoried roadless areas.  Some of the changes had not been proposed in the DEIS.  Without preparing a supplemental environmental impact statement (SEIS), or accepting public comment on the changes, the USFS restricted the maximum diameter of timber in stewardship projects, and included roadless areas with classified roads within the scope of the rule.  An additional 4.2 million acres (not including the Tongass) were thus added to the scope of the rule without proper analysis or opportunity for public comment.

26.     Also without the benefit of a SEIS and without opportunity for public comment, the FEIS eliminated the procedural alternatives, on the ground that the procedural rule had been incorporated into the Final Planning Rule adopted on November 9, 2000 and codified as 36 C.F.R. 219.9(b)(8).  The USFS acknowledged that the Final Planning Rule and the National Forest System Road Management and Transportation System Rule were being simultaneously promulgated in separate rulemakings, and that these rules "might have a cumulative impact".  FEIS 3-240.  However, the cumulative impact of these closely related rules, all being rushed through the agency before the change in administrations, was never properly evaluated or disclosed for public comment.

27.     In addition to the prohibition alternatives, the FEIS included four alternatives for application of the nationwide prohibition alternatives to the Tongass.

These alternatives were:  1) "Tongass Not Exempt," which applied the same prohibition alternative to the Tongass that applied to national forests nationwide;  2) "Tongass Exempt," which fully and permanently exempted the Tongass;  3) "Tongass Deferred," which postponed a decision on whether or not to apply the nationwide prohibitions to the Tongass until April 2004; and 4) "Tongass Selected Area," which applied prohibitions on inventoried roadless areas located in certain land use designations identified in the Tongass Land Use Management Plan.

28.    In a major change from the DEIS, the preferred Tongass alternative in the FEIS was changed from Tongass Deferred to Tongass Not Exempt, with a mitigation measure added that delayed the application of the rule to the Tongass until April 4, 2004.  Under this alternative and mitigation measure, application of the rule to the Tongass would be delayed, but the decision to not exempt the Tongass would be included in the final rule.  Defendants stated that public comment was the reason for the change in the Tongass alternative.  In the FEIS discussion on changes from the proposed rule, no explanation was offered as to how the USFS planned to comply with the congressional directive in the TTRA to seek to meet timber demand even though USFS calculations clearly substantiated that meeting demand would be impossible.  In place of the DEIS discussion of the Defendants' statutory duty to seek to meet timber demand, the FEIS included a brief discussion as to why the USFS does not need to comply with this provision of the TTRA, and an explanation that exempting the Tongass would not meet the President's directive establishing the purpose and need for the rulemaking.

29.     The USFS acknowledges in a different section of the FEIS that application of any of the prohibition alternatives to the Tongass would prevent the USFS from exercising its discretion to meet market demand: "Relative to current industry operations and projected timber demand, the prohibition alternatives may result in a harvest shortfall of approximately 73 to 77 MMBF of timber annually. In the short-term, the immediate effect of supply shortages is likely to be intense competition and bidding activity for timber sales that are made available. As time goes by, competition will drive out the least efficient operations, thereby reducing mill capacity and the associated long-term demand for Tongass timber. In the long term, a sustained level of 50 MMBF may support some but not all of the existing and planned timber processing facilities in the region." (FEIS at 3-378 to 3-379)

30.     The Wilderness Act and ANILCA both reserve exclusive rights to Congress to determine which additional lands will be withdrawn from most or all multiple-uses and receive protection to maintain a wilderness-like condition. Notwithstanding Congress' finding that ANILCA provided sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska, the stated purpose of the Roadless Rule is to "conserve and protect the increasingly important values and benefits of roadless areas by: 1) prohibiting activities that have the greatest likelihood of degrading desirable characteristics of inventoried roadless areas..." FEIS 1-14. The FEIS states that the action was needed because "[r]oad construction, reconstruction and timber harvest activities in inventoried roadless areas can directly threaten the fundamental characteristics of these areas by altering natural

landscapes including habitat fragmentation and changes in native plant and animal communities..." The FEIS goes on to explain that the action is needed because "[l]ocal land management planning efforts may not always recognize the cumulative national significance of inventoried roadless areas and the values they represent, especially given the increasing development of the nation's landscape." (FEIS at 1-14 through 1-15). The Roadless Decision does not explain why Defendants are not subject to the finding by Congress in ANILCA that the proper balance between development and protection has been realized within Alaska and therefore administrative agencies may not withdrawal additional land for protection without the consent of Congress.

31.    The Roadless Decision FEIS documented that the economic effects of prohibition alternatives 2 through 4 would cause Tongass mill closures and reduce Tongass logging activity which "would trigger direct job losses of 364 to 383 employees in the private sector and direct income losses estimated at $16.7 to $17.6 million." The job losses would occur in Ketchikan, Coffman Cove, Craig, Thorne Bay, Klawock, Metlakatla, Wrangell, Petersburg, and Hoonah. "Over the long term as the effect of the direct job losses and business closures progressed through the economy, another 218 to 230 jobs may eventually be lost along with an additional $10.1 to $10.6 million in income." Finally, approximately 141 Forest Service jobs along with a loss of income of $7.1 million would be lost under the prohibition alternatives, along with another 141 indirect jobs and $3.4 million in personal income. The total direct and indirect job and income losses from application of the prohibition alternatives on the Tongass would be 864 to 895 jobs along with a loss of $37.3 to $38.7 million dollars in income. (FEIS at 3-

379 to 3-380). Despite the devastating impact on Southeast Alaska communities, the USFS exemption team recommended in January 2000 that exemptions from the rule based on dependency of timber harvest should not be in the scope of analysis because such exemptions would not be responsive to the directive from the President.

32.    The Final Roadless Decision was signed on January 5, 2001, and published on January 12, 2001. In a change from the November 13, 2000 FEIS, the Final Roadless Decision immediately applied the roadless restrictions to the Tongass. The record of decision (ROD) states that approximately two-thirds of the total timber harvest planned on the Tongass over the following five years was projected to come from inventoried roadless areas on the Tongass. The ROD further acknowledged that an immediate prohibition on road construction would eliminate 95 percent of the timber harvest from those areas and thus cause adverse impacts to timber dependent communities. (66 Fed. Reg. at 3254). The ROD does not discuss how the USFS can possibly comply with the TTRA obligation to seek to meet timber demand from the Tongass without timber from roadless areas. The ROD provides no rationale for the sudden reversal from the prior position of the USFS that access to roadless timber in the Tongass is necessary for the USFS to comply with federal law.

33.    The ROD concluded that "the long-term ecological benefits to the nation of conserving these inventoried roadless areas outweigh the potential economic loss to those local communities and that a period of transition for affected communities would still provide certain and long term protection of these lands." (66 Fed. Reg. at 3255).

14

34.     The ROD provided that the prohibitions did not apply to roadless areas of the Tongass for which a notice of availability of a DEIS allowing road construction, reconstruction and the cutting, sale, or removal of timber from roadless areas was published in the Federal Register prior to the January 12, 2001 date of publication of the Roadless Decision in the Federal Register. (66 Fed. Reg. at 3254). There was no explanation as to how this temporary supply of timber affects the long-term statutory obligation of the USFS to seek to meet timber demand under the TTRA.

35.     The Roadless Decision also did not adequately consider existing or future hydropower and geothermal development opportunities on the Tongass, development of which are either impaired or prohibited by the Final Roadless Rule.

36.     The Final 2001 Roadless Rule expressly refused to provide an exception for access to new leasable minerals "because of the potentially significant environmental impacts that road construction could cause to inventoried roadless areas..." (66 Fed. Reg. at 3265).

37.     In 2001, the State of Alaska litigated the Roadless Decision on the ground, among others, that it violated § 1326 (a), the "no more" clause of ANILCA and § 101, the "seek to meet timber demand" clause, of the TTRA.

38.     On June 10, 2003, the State of Alaska and the Department of Justice settled the Roadless Decision litigation. In Paragraph 1.B. of the settlement agreement, the Defendants agreed to publish in the Federal Register an Advance Notice of Proposed Rulemaking (APRN) "to exempt both the Tongass and Chugach National Forests from application of the Roadless Rule." Defendants also agreed to publish a

second proposed rule temporarily exempting the Tongass until the new rule was effective.

39.     On July 14, 2003, the U.S. District Court for the District of Wyoming ruled that the 2001 Roadless Decision violated NEPA and the Wilderness Act and invalidated the rule pursuant to the APA. *Wyoming v. United States Dep't of Agric.* 277 F.Supp.2d 1197, 1239 (D. Wyo. 2003).

40.     Notwithstanding the invalidation of the Roadless Decision by the U.S. District Court for the district of Wyoming, on October 30, 2003, the USFS published a supplemental information report ("SIR") concluding that "no significant new information or changed circumstances existed that required the preparation of a supplemental environmental impact statement (SEIS) before making the decision to adopt the proposed rule to temporarily exempt the Tongass from the prohibitions of the roadless rule."

41.     The SIR specifically considered three new circumstances:  1) the Tongass was being managed under the 1997 Tongass Forest Plan ROD instead of the 1999 ROD, as contemplated by the 2001 Roadless Rule FEIS; 2) the continuing decline in timber harvest levels and associated employment since the Roadless Decision FEIS was published; and 3) a proposed land exchange with Sealaska Corporation. After the USFS considered the above circumstances, the SIR stated that "the decision-making picture" was not substantially different than it was at the time the Roadless Rule was adopted in January 2001, and that no additional environmental analysis was required.

16

42.    The USFS promulgated an interim rule, 36 C.F.R. 294.14(d), temporarily exempting the Tongass from the Roadless Rule (68 Fed. Reg. 75,136 (Dec. 30, 2003)).   In so doing, the USFS acknowledged that ANILCA and TTRA "provide important Congressional determinations, findings, and information relating to management of national forest lands on the Tongass National Forest," and determined that exempting the Tongass from the Roadless Rule was "how to best implement the letter and spirit of congressional direction." (*Id.* at 75,142).

43.    In explaining why it was exempting the Tongass from the Roadless Rule in 2003 after selecting the Tongass Not Exempt alternative in 2001, the USFS stated that the 2001 Roadless Rule ROD had concluded that ensuring lasting protection of roadless values outweighed socioeconomic costs to local communities, but the USFS now believed that: "[C]onsidered together the abundance of roadless values on the Tongass, the protection of roadless values included in the Tongass Forest Plan, and the socioeconomic costs to local communities of applying the roadless rule's prohibitions to the Tongass, all warrant treating the Tongass differently from the national forest outside Alaska." (*Id.* at 75, 139). In addition, the USFS stated: "Because most Southeast Alaska communities are nearly surrounded on land by inventoried roadless areas of the Tongass, the roadless rule significantly limits the ability of communities to develop road and utility connections that almost all other communities in the United States take for granted." (*Id.* at 75,137).

44.    On May 13, 2005, the Forest Service promulgated the so called State Petition Rule, which eliminated the national Roadless Rule for managing roadless

areas. Management of national forests reverted to the prior regime by which the USFS administratively designated roadless areas, and restrictions in such roadless areas, by individual forest plan. The State Petitions Rule added an option for a state to petition the USFS to alter the level of protection afforded by the forest plan for roadless areas on national forest lands within that state. (70 Fed. Reg. 25661).

45.     In September 2006, the State Petitions Rule was enjoined on NEPA and Endangered Species Act grounds by a U.S. District Court in California. The 2001 Roadless Rule and the 2003 interim rule exempting the Tongass from the Roadless Rule were reinstated by the Court in *California v. United States Department of Agriculture*, 459 F.Supp.2d 874, 915-916 (N.D. Cal.). This court did not review or rule on the merits of the 2001 Roadless Rule.

46.     In *California ex. rel., Lockyer v. United States Department of Agriculture*, 575 F.3d. 999 (9th Cir. 2009), the Ninth Circuit upheld the district court's decision to enjoin the State Petition Rule and reinstate the 2001 Roadless Rule, including the Tongass exemption. The court did not review or rule on the merits of the 2001 Roadless Rule.

47.     In August 2008, the U.S. District Court for the District of Wyoming for the second time ordered a nationwide injunction of the 2001 Roadless Rule, finding that it violated the Wilderness Act and NEPA. *Wyoming v. U.S. Dep't of Agric.*, 570 F.Supp.2d 1309, 1352, 1355 (D. Wyo. 2008)). This decision is now on appeal to the Tenth Circuit Court of Appeals. No court in the Ninth Circuit has ever ruled on the merits of the Roadless Decision.

48.     On May 28, 2009, the Secretary of Agriculture issued Memorandum 1042-154, which reserves "to the Secretary the authority to approve or disapprove road construction or reconstruction and the cutting, sale, or removal of timber" from inventoried roadless areas, including the 9.3 million acres of inventoried roadless areas on the Tongass. As a result of this directive, any decision regarding a "significant action" in a roadless area, such as obtaining a mining permit in a new area, building or reconstructing or upgrading an existing road or trail or RS-2477 right-of-way, harvesting timber, or building roads in a utility corridor, must obtain final approval from the Office of the Secretary.

49.     On May 28, 2010, the secretary signed a memorandum renewing the interim directive for one more year. A second one year extension was issued on May 30, 2011 in the form of Memorandum 1042-156.

50.     On December 22, 2009, the Organized Village of Kake and other plaintiffs filed a complaint challenging the Tongass Exemption on the ground that its adoption violated the APA and NEPA.

51.     On March 4, 2011, the U.S. District Court for the District of Alaska issued an order vacating the Tongass Exemption and reinstating the 2001 Roadless Rule's application to the Tongass on the ground that the promulgation of the Tongass Exemption was arbitrary and capricious because the reasons proffered by the USFS in support of the rule were implausible, contrary to the evidence in the record, and

contrary to Ninth Circuit precedent.[2]   Judgment was entered in this case on May 24, 2011 and the State intends to file an appeal of the decision to the Ninth Circuit Court of Appeal.

52.   Although it has been over 10 years since the Final Roadless Rule was published in the Federal Register, the rule has only briefly been in effect in Alaska. In 2001, the effective date was initially delayed by the USFS and the rule was then enjoined by the U.S. District Court for the District of Idaho before it became effective. Following reversal of the Idaho district on appeal, the Ninth Circuit Court of Appeals issued a mandate on April 14, 2003 pursuant to which the 2001 Roadless Rule first became effective. On July 14, 2003, the U.S. District Court for the District of Wyoming issued a nationwide injunction prohibiting the USFS from implementing the rule. Later that year, on December 30, 2003, the USFS adopted a final rule temporarily exempting the Tongass from the 2001 Roadless Rule. This rule exempting the Tongass remained in effect until the May 24, 2011 entry of judgment by the Alaska District Court in *Organized Village of Kake v. United States Department of Agriculture.* Except for the period from April 14, 2003 through July 14, 2003, the 2001 Roadless Rule has never been in effect in the Tongass until the May 24, 2011 entry of judgment. During the short portion of 2003 when the rule was effective, it was the subject of litigation by the State in the U. S. District Court. The settlement of that litigation resulted in the promulgation of

---

[2]   *Organized Village of Kake*, supra., Order and Opinion at page 25.

the temporary Tongass Exemption and an advanced notice of rulemaking proposing the permanent exemption of the Tongass and the Chugach.

53.     The 2001 Roadless Rule has also not been in effect in the Chugach during a significant portion of the period since it was promulgated. The rule first became effective on April 14, 2003 following reversal of the nationwide injunction issued by the U.S. District Court for the District of Idaho. On July 14, 2003, the rule was again enjoined nationwide, this time by the U.S. District Court for the District of Wyoming. On May 13, 2005, while the 2001 Roadless Rule was still enjoined by the U.S. District Court in Wyoming, the USFS promulgated the State Petitions Rule, which replaced the 2001 Roadless Rule. The 2001 Roadless Rule only became applicable to the Chugach again in September 2006 when it was reinstated by the court in *California v. United States Department of Agriculture*. In August 2008 the U.S. District Court in Wyoming once again issued a nationwide injunction of the 2001 Roadless Rule, a decision that is pending before the Tenth Circuit Court of Appeals. As a result of the nationwide injunction issued by the District Court in Wyoming, the California U.S. District Court has limited its injunction reinstating the 2001 Roadless Rule to states within the Ninth Circuit and New Mexico. At most, the 2001 Roadless Rule has been applicable to the Chugach for less than five years.

## FIRST CLAIM

### (ANILCA)

54.     Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 53 of this complaint

55.   In ANILCA § 101(d), Congress determined that ANILCA'S protection of "scenic, natural, cultural and environmental values" on Alaska lands resulted in the appropriate balance between protection and development.  In ANILCA § 1326(a) Congress required that because it had explicitly determined this balance, Congress itself had to approve, by joint resolution, any further designation of public land in excess of 5,000 acres that would no longer be available for "more intensive use and disposition." (ANILCA § 101(d)).

56.   The USFS decision to apply the 2001 Roadless Rule to the national forests in Alaska makes 90 percent of the Tongass and 98.9 percent of the Chugach unavailable for timber harvest, for hydropower development, for geothermal power development, for mining, and for any other development or activity that requires roads.

57.   By setting aside 9.3 million acres of roadless areas in the Tongass and 5.4 million acres of roadless areas in the Chugach without congressional authorization, defendants have violated §§ 101, 708, and 1326 of ANILCA.  Application of the Roadless Decision to the national forests in Alaska was arbitrary and capricious, an abuse of discretion and not in accordance with or in observance of law within the meaning of the APA, 5 U.S.C. § 706(2), and has caused and will continue to cause immediate, direct, adverse and irreversible harm to the State of Alaska and its citizens.

## SECOND CLAIM

## (TTRA)

58.   Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 57 of this complaint.

59.     In 1980, Congress directed the USFS in ANILCA § 705 to take certain actions in order to maintain timber harvest levels and related employment levels existing at the time of passage of ANILCA.  In 1990, Congress explicitly directed the USFS in TTRA § 101 to seek to provide a volume of timber sufficient to meet the annual and planning cycle market demand for Tongass timber.

60.     Congress also directed the USFS, in § 105(b) of TTRA, to seek to provide a supply of timber from the Tongass to those purchasers qualifying as "small business concerns" under the Small Business Act, as amended (15 U.S.C. § 631 *et seq.*).

61.     In the FEIS for the Roadless Decision, the USFS projected that applying the Roadless Rule to the Tongass would result in a timber shortfall of 73 to 77 MMBF annually, resulting in a loss of direct jobs of up to 383 with the loss of another 230 jobs that are indirectly dependent on timber. FEIS 3-378, 3-379.  By setting aside so much commercial forest land pursuant to the 2001 Roadless Rule that insufficient timber volume is available to meet industry needs, Defendants have violated TTRA §§ 101 and 105 by eliminating the ability of the USFS to even consider an option of offering sufficient timber for sale to meet annual and planning cycle market demand.

62.     Defendants' failure to maintain their discretion to analyze, determine and seek to meet the market demand for timber from the Tongass violates the TTRA and is arbitrary and capricious, an abuse of discretion and not in accordance with or in observance of law within the meaning of the APA, 5 U.S.C. § 706(2), and has caused and will continue to cause immediate, direct, adverse and irreversible harm to plaintiff.

## THIRD CLAIM

### (Wilderness Act)

63.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 62 of this complaint.

64.     The Wilderness Act reserves exclusively to Congress the authority to designate wilderness areas. 16 U.S.C. § 1131(a).  The Executive Branch makes recommendations to Congress, which become effective "only if so provided by an Act of Congress." 16 U.S.C. § 1132(b).

65.     "Wilderness" is defined as an area, generally 5,000 acres or more, "untrammeled by man," and as "undeveloped federal land retaining its primeval character and influence, without permanent improvements or human habitation." 16 U.S.C. § 1131(c).  Commercial enterprise, permanent or temporary roads, mechanical transports, and structures or installations generally are prohibited in wilderness areas. 16 U.S.C. § 1133(c).

66.     The 2001 Roadless Rule mandates management of inventoried roadless areas in the national forests as *de facto* wilderness, without an act of Congress, in violation of the Wilderness Act. This action is arbitrary and capricious, an abuse of discretion and not in accordance with or in observance of law within the meaning of the APA, 5 U.S.C. §706(2), and has caused and will continue to cause immediate, direct, adverse and irreversible harm to the State of Alaska and its citizens.

### FOURTH CLAIM
### (NFMA)

67.    Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 66 of this complaint.

68.    Under the NFMA, each national forest is to be managed in accordance with a comprehensive forest plan. 16 U.S.C. § 1604. All plans, projects and actions must be consistent with such forest plan. Any significant amendment to a forest plan must be adopted only after analysis and public comment consistent with the provisions of the NFMA. 16 U.S.C. § 1604(d) and (f).

69.    The Roadless Rule is inconsistent with the Tongass Land Management Plan (TLMP) and the Chugach Land Management Plan (CLMP), pursuant to which Alaska's two national forests are managed. Application of the Roadless Rule to the Tongass and the Chugach results in major *de facto* amendments to the TLMP and the CLMP in violation of the NFMA.

70.    The Roadless Rule places severe limitations on existing active management in the Tongass and the Chugach and effectively prevents implementation of the TLMP and the CLMP. The dramatic changes the Roadless Rule imposes on the TLMP and CLMP clearly constitute significant changes as defined in the NFMA and can only be implemented in a public process as prescribed in NFMA. 16 U.S.C. § 1604. Because the USFS did not consider the effect of the Roadless Rule on the TLMP or CLMP or comply with the NFMA requirements for amending a forest plan, the USFS action in applying the Roadless Rule to Alaska forests is a violation of the NFMA. This action is arbitrary and capricious, an abuse of discretion and not in accordance with or in

observance of law within the meaning of the APA, 5 U.S.C. §706(2), and has caused and will continue to cause immediate, direct, adverse and irreversible harm to the State of Alaska and its citizens.

## FIFTH CLAIM

### (NEPA)

71.     Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 70 of this complaint.

72.     NEPA requires federal agencies to prepare an environmental impact statement (EIS) when federal actions have a significant environmental effect. 42 U.S.C. § 4332.

73.     As soon as it determines that an EIS is required, a federal agency is required to commence a scoping process that must include states and state agencies.  40 C.F.R. § 1501.7.  The purpose of the scoping process is to identify those issues that should be addressed in the EIS.  A failure to conduct the scoping process in a manner that includes all interested parties and identifies all relevant issues is a violation of NEPA. Multiple states requested additional time to provide comments on the scoping, and without adequate explanation, were refused any extension of time.  The USFS also denied requests for more information concerning the locations of the roadless areas to be covered by the Roadless Rule.  Multiple states were also denied the opportunity to participate in the rulemaking as cooperating agencies.  Arbitrarily and capriciously denying these states and other commenters the opportunity to meaningfully participate in

the scoping process prevented the USFS from obtaining informed comment in the scoping process in violation of NEPA.

74.      NEPA requires federal agencies to develop appropriate alternatives for any action that involves unresolved conflicts concerning alternative uses of available resources. 42 U.S.C. § 4332(2)(E). In the development of the Roadless Rule, the USFS refused to consider any alternatives that did not comport with the President's directive and pre-determined result of prohibiting road construction and severely restricting or prohibiting timber harvest in roadless areas. In the case of the Tongass and the Chugach in Alaska, this all or nothing approach resulted in approximately 90 percent of the Tongass and 99 percent of the Chugach with prohibitions on road construction. The prohibition alternatives were therefore unreasonably narrow in violation of NEPA. In this case, NEPA requires consideration of a range of alternatives that include one or more alternatives that allow some commercial level of timber harvest and road construction to support a reasonable level of development of timber harvest, hydropower, geothermal energy, mineral extraction and other activities.

75.      NEPA and its regulations require federal agencies to prepare a supplemental environmental impact statement (SEIS) where there are significant new circumstances or information bearing on the proposed actions. 40 C.F.R. §1502.9. During the rulemaking and subsequent to the DEIS and comment period, the USFS made substantial changes to the rule without preparing a SEIS. First, it eliminated all of the procedural aspects of the Roadless Rule by incorporating those rules into the Planning Regulations. Next, the USFS extended the scope of the Roadless Rule to cover areas

27

with classified roads within inventoried roadless areas. The USFS thus added 4.2 million acres of forest (in addition to the Tongass) to the area to be covered after the comment period ended. During the rulemaking, the USFS also added new timber size restrictions on stewardship projects that were not subject to comment. These changes created significant new circumstances and information that required additional analysis and preparation of a SEIS. Failure to do so was a violation of NEPA.

76.    The USFS also violated NEPA when it failed to adequately consider the cumulative impacts on the human environment of its coordinated strategy to simultaneously promulgate the Roadless Rule, a new National Forest System Land and Resource Management Planning Rule, and a National Forest System Road Management and Transportation System Rule. 36 C.F.R. § 212 *et seq.* and 36 § 294 *et seq.* In addition, the USFS failed to consider the cumulative impact resulting from the decommissioning of roads in combination with the restrictions placed on road construction and reconstruction in roadless areas.

77.    The USFS, in promulgating and implementing the Roadless Rule, has so severely restricted the flexibility of forest supervisors to actively manage national forests that the USFS' ability to protect the health of individual forests, including the Tongass and the Chugach in Alaska, has been diminished. The State of Alaska has a significant financial interest in a healthy national forest based on timber receipt payments from the USFS as well as the positive impact a healthy forest and timber industry has on the local Alaskan economies dependent on the forests. The State of Alaska also has an interest in the health of the national forest land as State lands and private property adjoin

28

and are comingled with the national forest lands in Alaska. The lack of flexibility of the USFS managers to actively manage the Tongass and the Chugach to control pests, to control wildfire in the Chugach, and to otherwise protect the health of the forests poses a threat to these nearby State and private lands.

78.    The above actions of the USFS in violation of NEPA were arbitrary and capricious, an abuse of discretion, and not in accordance with or in observance of law within the meaning of the APA, 5 U.S.C. § 706(2), and have caused and will continue to cause immediate, direct, adverse and irreversible harm to plaintiff.

### SIXTH CLAIM

### (MUSYA and OAA)

79.    Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 78 of this complaint.

80.    The USFS decision to set aside 90 percent of the Tongass and 98.9 percent of the Chugach for a single use violates the mandates of the Multiple-Use Sustained-Yield Act (MUSYA) 16 U.S.C. §§ 528, 529, and 531, which requires multiple-use management that includes timber production.

81.    The USFS decision to set aside 90 percent of the Tongass and 98.9 percent of the Chugach for a single use also violates the Organic Administration Act (OAA) 16 U.S.C. § 475, which established the purposes for which national forests may be created as "to improve and protect the forest within the boundaries, or for the purpose of securing favorable conditions of water flows, and to furnish a continuous supply of timber for the use and necessities of citizens of the United States."

82.     Although the USFS has discretion in the management of national forest lands, the designation of 90 percent of the Tongass and 98.9 percent of the Chugach as a single use exceeds that discretion and is a violation of the multiple-use and sustained-yield provisions of the MUSYA and the OAA and is arbitrary and capricious, an abuse of discretion and violates the APA.

83.     The above actions of the USFS in violation of the MUSYA and OAA were arbitrary and capricious, an abuse of discretion, and not in accordance with or in observance of law within the meaning of the APA, 5 U.S.C. § 706(2), and have caused and will continue to cause immediate, direct, adverse and irreversible harm to plaintiff.

## SEVENTH CLAIM

### (APA)

84.     Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 83 of this complaint.

85.     Under the APA, an agency action must be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or in excess of statutory authority.  5 U.S.C. § 706.

86.     For the reasons set forth in claims one through six, the Roadless Decision is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and an action taken by the USFS in excess of its statutory authority, and must be set aside.

87.     In addition to violating the statutes identified in claims one through six above, Defendants also violated the Regulatory Flexibility Act (RFA) (5 U.S.C. 601

*et seq.*) by failing to prepare a Regulatory Flexibility Analysis that adequately evaluated the substantial impacts of the Roadless Decision on small businesses, especially those located in Alaska.  Blatantly ignoring the finding of the Office of Advocacy of the Small Business Administration that the Roadless Decision was promulgated in violation of the RFA was arbitrary, capricious, an abuse of discretion, not in accordance with the law, and a violation of the APA..

88.     The USFS also violated 5 U.S.C. § 706 by failing to provide a rationale for changing the preferred DEIS Tongass Alternative from deferring a decision on the applicability to the Tongass until 2004 to a final rule provision of Tongass Not Exempt.  In the DEIS and the draft rule the USFS extensively discussed the need for timber sales from inventoried roadless areas to meet the statutory obligation under the TTRA to seek to meet timber demand from the Tongass.  The primary stated reason for deferring the applicability decision on the Tongass until 2004 was to allow a re-evaluation of the timber demand in 2004 to determine if demand had diminished to a point that it was possible to meet such demand without timber from roadless areas.  The DEIS acknowledged that approximately two-thirds of the Tongass timber needed to meet demand was planned to be sold from roadless areas and application of the Roadless Rule to the Tongass would result in the inability to meet demand.  Nevertheless, the USFS never explained in the final Roadless Decision why it selected the alternative of Tongass Not Exempt in violation of the TTRA requirement to seek to meet timber demand.  The decision to ignore and violate the statutory requirements of the TTRA in applying the

31

Roadless Rule to the Tongass is therefore arbitrary, capricious, an abuse of discretion and a violation of the APA.

89.     The APA also requires that an agency publish a proposed notice of rulemaking that shall include "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3). The USFS violated this requirement by changing the maximum diameter of timber that could be harvested in stewardship projects in inventoried roadless areas without adequate notice or opportunity for comment. In addition, the USFS violated this provision by failing to provide the public with the controlling maps of the covered areas until after the close of the public comment period. When finally made available, these controlling maps increased the acres covered by the Roadless Rule from the 54.3 million acres stated in the public notice to 58.5 million acres. Therefore, the USFS violated the APA notice provisions by adding 4.2 million additional acres (in addition to the Tongass) to those covered by the final rule without adequate opportunity for public comment.

90.     The Roadless Rule is also arbitrary because the rulemaking is based on a presumption that timber harvest and road construction inevitably degrade forest health. 66 Fed. Reg. 3244-47. The USFS failed to adequately support this presumption with facts.

91.     The USFS actions in violating the APA were arbitrary, capricious and an abuse of discretion. These actions have caused and will continue to cause immediate, direct, adverse and irreversible harm to the State of Alaska and its citizens.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment as follows:

a. A declaration that the 2001 Roadless Area Conservation Final Rule and Record of Decision violate ANILCA.

b. A declaration that the 2001 Roadless Area Conservation Final Rule and Record of Decision violate TTRA.

c. A declaration that the 2001 Roadless Area Conservation Final Rule and Record of Decision violate the Wilderness Act.

d. A declaration that the 2001 Roadless Area Conservation Final Rule and Record of Decision violate NFMA.

e. A declaration that the 2001 Roadless Area Conservation Final Rule and Record of Decision violate NEPA.

f. A declaration that the 2002 Roadless Area Conservation Final Rule and Record of Decision violate MUSYA and OAA.

g. A declaration that the 2001 Roadless Area Conservation Final Rule and Record of Decision violate the APA.

h. An order invalidating the Roadless Rule and permanently enjoining the Defendants from applying the 2001 Roadless Area Conservation Final Rule and Record of Decision to the Tongass National Forest or the Chugach National forest.

i. An order directing Defendants to comply with ANILCA, TTRA, the Wilderness Act, NFMA, NEPA, MUSYA and OAA.

j.   An award of the costs incurred by plaintiff and such other fees as may be allowed by applicable law.

k.   Such other relief as the Court deems appropriate.

DATED this _16th_ day of June, 2011, at Juneau, Alaska.

JOHN J. BURNS
ATTORNEY GENERAL

By: _____
Thomas E. Lenhart
Alaska Bar No. 0703006
Assistant Attorney General
Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2417
Email: tom.lenhart@alaska.gov

## TABLE OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| Roadless Decision | Roadless Area Conservation Final Rule and Record of Decision |
| TLMP | Tongass land Management Plan |
| CLMP | Chugach Land Management Plan |
| APA | Administrative Procedure Act |
| NFMA | National Forest Management Act |
| NEPA | National Environmental Policy Act |
| ANILCA | Alaska National Interest Lands Conservation Act. |
| TTRA | Tongass Timber Reform Act |
| MMBF | million board feet |
| LUD II | Land Use Designation II (Roadless areas) |
| ROD | Record of Decision |
| FEIS | Final Environmental Impact Statement |
| DEIS | Draft Environmental Impact Statement |
| NFMA | National Forest Management Act |
| MUSYA | Multiple-Use Sustainable-Yield Act |
| OAA | Organic Administration Act |
| RFA | Regulatory Flexibility Act |